**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

SHELLY VIEIRA, individually and as Parent and
Guardian of J.V., a minor,

                                      Plaintiffs,

-vs-

HONEOYE CENTRAL SCHOOL DISTRICT,          DECISION AND ORDER
MONROE #1 BOARD OF COOPERATIVE
EDUCATIONAL SERVICES (BOCES), and DAVID G.    09-CV-6163-CJS-JWF
LASPESA, WILLIAM SCHOFIELD, BETSY WALKER,
individually and in their official capacities and other
known or unknown employees of the Honeoye Central
School District,

                                      Defendants.

**APPEARANCES**

For Plaintiffs:                                    Jeffrey Wicks, Esq.
                                                      Jeffrey Wicks, PLLC
                                                      36 West Main Street, Suite 318
                                                      Rochester, NY 14614
                                                      (585) 325-6070

For Defendants BOCES and Betsy Walker:   Edward J. Sarzynski, Esq.
                                                       Hogan, Sarzynski, Lynch, Surowka
                                                       &amp; DeWind LLP
                                                       520 Columbia Drive, Suite 204
                                                       Johnson City, NY 13790
                                                       (607) 797-4839

| | |
|---|---|
| For Defendants Honeoye Central School District, William Schofield and David G. Laspesa: | Jeffrey J. Calabrese, Esq.<br>Bethany A. Centrone, Esq.<br>Meghan M. Lynch, Esq.<br>Harter, Secrest & Emery LLP<br>1600 Bausch & Lomb Place<br>Rochester, NY 14605<br>(585) 231-1280 |

## INTRODUCTION

**Siragusa, J.** This matter is before the Court on Plaintiffs' motion, pursuant to Federal Rule of Civil Procedure 54, for reconsideration of the Court's prior Decision and Order, docketed on November 17, 2010, ECF No. 57, which partially dismissed the amended complaint. It is also before the Court on defendants BOCES' and Betsy Walker's ("Walker") cross-motion for reconsideration, pursuant to Federal Rule of Civil Procedure 54, and upon reconsideration, dismissal of the Fifth and Sixth causes of action and entry of judgment. For the reasons stated below, Plaintiffs' motion for reconsideration is granted in part, denied in part, and BOCES and Walker's cross-motion is granted in its entirety.

## BACKGROUND

The amended complaint filed on August 5, 2009, makes the following claims against BOCES and Walker:[1]

 4. Intentional infliction of emotional distress;

 5. Negligent infliction of emotional distress;

---

[1] BOCES and Walker are not named in counts one, two and three, which involve only The Honeoye Central School District, District Superintendent William Schofield, and school Principal David G. Laspesa.

2

6. Negligent hiring, training, supervision and retention; and

7. Violation of 42 U.S.C. § 1983.[2]

In its prior Decision and Order, the Court dismissed the fourth cause of action against BOCES and Walker as time-barred; dismissed the seventh cause of action against BOCES for lack of plausibility; dismissed the seventh cause of action against Walker on qualified immunity grounds; and denied dismissal of the fifth and sixth claims as to both BOCES and Walker.

Plaintiffs now ask the Court to reconsider and reverse its ruling dismissing the Seventh cause of action as to both BOCES and Walker. Defendants now seek dismissal of the amended complaint in its entirety.

## STANDARDS OF LAW

***Fed. R. Civ. P. 54***

The pertinent portion of Federal Rule of Civil Procedure 54 states as follows:

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). As the Southern District observed in *Green v. Beer*, No. 06 Civ. 4156 (KMW) (JCF), 2009 WL 3401256 (S.D.N.Y. Oct. 22, 2009):

> Rule 54(b) revisions should be limited to instances in which "there is an intervening change of controlling law, the availability of new evidence, or

---

[2] In the seventh cause of action, Plaintiffs allege that Defendants deprived Plaintiffs of their civil rights (4th, 5th & 14th Amendments) by participating in discriminatory behavior, creating a hostile environment, and engaging in harassment and disparate treatment of J.V.

the need to correct a clear error or prevent a manifest injustice." *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003). Where there is an arguable "intervening change of controlling law,"

*Id*., at *2. Reconsideration is determined within the discretion of the district court. *See Cobalt Multifamily Investors I, LLC v. Shapiro*, No. Civ. 6468 (KMW) (MHD), 2009 WL 4408207, 1 (S.D.N.Y. Dec. 1, 2009).

***Motion to Dismiss Standard*[3]**

The U.S. Supreme Court, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 1964-65 (citations and internal quotations omitted). *See also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell*

---

[3]In its prior decision, the Court determined that although Defendants were time-barred from bringing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), their Rule 12(c) motion amounted to a motion to dismiss for failure to state a claim by operation of Rule 12(h) and the Second Circuit's holding in *Ad-Hoc Committee of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College*, 835 F.2d 980, 982 (2d Cir.1987). *Vieira v. Honeoye Cent. School Dist.*, No. 09-CV-6163-CJS, 2010 WL 4642922, *4 (W.D.N.Y. Nov. 17, 2010).

4

*Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)

When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000). On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) (*citing In re American Express Co. Shareholder Lithog.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)). As the Supreme Court clarified in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009):

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has

not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. at 678–79.

### *Section 1983 & Constitutional Provisions*

Section 1983 was modeled on § 2 of the Civil Rights Act of 1866. It has been amended to its present form today:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 (1996). In the Seventh cause of action of their Amended Complaint, Plaintiffs have also cited to the Fourth, Fifth and Fourteenth Amendments, which read as follows:

> IV. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
>
> V. No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation....

XIV. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Amends. 4, 5 & 14.

## ANALYSIS

### *Plaintiffs' Reconsideration Application*

In arguing for reconsideration, Plaintiffs maintain that the Court applied the wrong standard when determining the constitutional claim made in the Seventh cause of action. Specifically, Plaintiffs contend that:

> 5. Amongst Plaintiffs' bases for relief is that this Court's Decision and Order dismissed the Section 1983 claim based on cases stating that *Monell* claims should have been stated in the Complaint. Plaintiff respectfully requests relief from this Decision and Order which determined that Defendants BOCES and Walker had qualified immunity with regard to Plaintiffs' 42 U.S.C. § 1983 claims.
>
> 6. Plaintiff respectfully asserts that none of the cases cited by this Court in its Decision and Order were either 12(b)(6) or 12(c) cases. All of those cases either were decided upon summary judgment motions or upon post-trial applications. Thus, the wrong standard was applied in dismissing Plaintiff's 1983 claims.
>
> 7. Moreover, even if such claims were required in the Complaint, the Amended Complaint stated sufficient facts to make a facially plausible claim Defendant BOCES' deliberate indifference in retaining, reassigning and failing to adequately supervise Defendant Betsy Walker, a verbally abusive and incompetent Teacher of the Visually Impaired....

Wicks Decl. ¶¶ 5–6.

***BOCES***

Plaintiffs contend that the cases upon which the Court relied on involved summary judgment, not Rule 12 dismissal. In that regard, the Court relied on a Third Circuit case in its decision:

> With regard to BOCES, Plaintiff has not alleged any policy, custom, or practice under which the alleged harm was caused to J.V. As the Third Circuit observed in *Losch v. Borough of Parkesburg, Pennsylvania*, 736 F.2d 903, 910 (3rd Cir.1984): "A plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.1984)." Plaintiff, here, has done neither. The amended complaint is devoid of any allegations that meet the pleading requirements to raise a plausible claim against BOCES.

*Vieira v. Honeoye Cent. School Dist.*, No. 09-CV-6163-CJS, 2010 WL 4642922, *9 (W.D.N.Y. Nov. 17, 2010). Although *Losch* involved a summary judgment motion, the principle of law, that a valid § 1983 complaint against a governmental entity must allege the challenged policy and injury suffered, is clearly applicable at the pleading stage. *Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 910 (3rd Cir. 1984). The Supreme Court's holding in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), makes it,

> quite clear that, unlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983. In short, a municipality can be sued under § 1983, but it cannot be held liable *unless a municipal policy or custom* caused the constitutional injury.

*Id.*, at 166 (emphasis added). The case of *Bezerra v. County of Nassau*, 846 F. Supp. 214 (E.D.N.Y.) is persuasive. There, the district court dismissed a complaint against a municipality because the complaint failed to allege that the plaintiff's rights "were violated because of the County's custom or policy of either allowing the beating, false

8

arrest, imprisonment and wrongful prosecution of [the plaintiff], or not investigating such practices, or failing to train officers so as to prevent such practices." *Id.*, at 220. Consequently, whether on a motion to dismiss, or a motion for summary judgment, the standard is the same—to hold a municipality liable, such as BOCES here, the complaint must allege (for a motion to dismiss), or the proof must show (for a summary judgment motion) that the alleged constitutional harm was the result of a municipal policy or custom. In this case, nowhere does the amended complaint allege any policy or custom of BOCES linked to the injury alleged to have been suffered. Accordingly, the Court denies reconsideration of its decision with respect to BOCES.

### *Walker*

Walker based her original motion to dismiss only on grounds of qualified immunity. Def.s' Mem. of Law at 13, ECF No. 23-2. However, in the subject cross-motion, Walker, prompted by what she maintains are misrepresentations of the amended complaint in Plaintiffs' reconsideration memorandum, now argues that the amended complaint is "not replete, nor filled with a barrage of examples of Walker's alleged misconduct." Def.s' Mem. of Law at 5, ECF No. 60-2. She further contends that, "Plaintiffs' bald assertions, unsupportable conclusions, and periphrastic circumlocutions do not justify proceeding on causes of action which do not on their face state a cognizable claim under Section 1983." The Court interprets such contentions as raising an additional ground in support Walker's Rule 12(c) motion. Therefore, in reviewing its prior decision with regard to Walker, the Court has also considered whether the amended complaint makes a plausible claim of discrimination through disparate

treatment or a hostile environment. Accordingly, as to Walker, the Court grants Plaintiffs' motion to reconsider and vacates its prior decision.

With respect to Walker, Plaintiffs' claim is made under 42 U.S.C. § 1983 and the Fourth, Fifth and Fourteenth Amendments. In that regard, the Second Circuit instructs that, "[a] § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of [his] federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). In its decision in *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 746 (2d Cir. 2003), which involved allegations of sexual harassment of a student by a university professor, the Second Circuit laid out the relevant standard for a hostile educational environment involving sexual harassment:

> Section 1983 sexual harassment claims that are based on a "hostile environment" theory, like Hayut's, are governed by traditional Title VII "hostile environment" jurisprudence. *See Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996). As a result, surviving summary judgment on a hostile environment claim under section 1983 (as under Title VII) requires evidence not only that the victim subjectively perceived the environment to be hostile or abusive, but also that the environment was objectively hostile and abusive, that is, that it was "permeated with 'discriminatory intimidation, ridicule, and insult,'...that is 'sufficiently severe or pervasive to alter the conditions'" of, in this case, the victim's educational environment.

*Hayut*, 352 F.3d at 744–45; *see also R.S. v. Bd. of Educ.*, 371 Fed. Appx. 231, 234 (2d Cir. 2010) (noting that *Hayut* stated § 1983 sexual harassment claims are governed by the traditional Title VII hostile environment jurisprudence). In *Hayut*, the Second Circuit also held that, "[t]here also must be evidence that the alleged discrimination was carried out because of sex." *Id.*, at 745 (citation omitted).

In *Shanahan v. New York*, No. 10 Civ. 0742, 2011 U.S. Dist LEXIS 6384, *15–16 (S.D.N.Y. Jan. 24, 2011), the district court held, in the context of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), that the plaintiff's,

> argument that his equal protection claim is based on "discrimination that creates a hostile or abuse working environment"...also fails, because the complaint contains no allegation that Shanahan is disabled or was subjected harassment based on his own protected status. Thus, for the reasons discussed in connection with Shanahan's hostile environment claim under the ADA and the ADEA, the equal protection claim is dismissed.

*Shanahan*, at *15–16.

From its review of these cases, the Court has extracted the elements of a hostile educational environment claim based on a plaintiff's disability and brought under the Fourteenth Amendment.[4] Those elements require allegations that: (1) the plaintiff is disabled; (2) the plaintiff was subjected to differential treatment or a hostile educational environment; and (3) that the differential treatment or hostility was because of his disability. In this regard, the amended complaint certainly does allege that J.V. is disabled as a result of a visual impairment, or blindness. It also attempts to allege that he was subjected to differential treatment or a hostile educational environment, though the allegations in the complaint do not rise to the level of severe or pervasive as required in the hostile environment case law. It also does not allege is that Walker subjected J.V. to a hostile educational environment *because of his disability*.

---

[4]Plaintiffs have also alleged that Defendants violated their rights under the Fourth and Fifth Amendments, but the allegations in the amended complaint do not establish an illegal search and seizure, or any violation of Plaintiffs' Fifth Amendment rights to Federal due process, or the right against self-incrimination.

11

In their opposition papers to Defendants' original motion to dismiss, Plaintiffs invited the Court to rely on *K.M. v. Hyde Park Central School District*, 381 F. Supp. 2d 343 (S.D.N.Y. 2005), which, incidentally, was a summary judgment case. They cite to *K.M.* in the present motion, as well. That case, however, is distinguishable. K.M. was subject to disability-related slurs as well as physical attacks. Those slurs and instances of physical assault were outlined by the district court in its decision:

> repeated instances of being called "stupid," "idiot," "retard" and other "disability-related insults" and acts of "physical aggression" and intimidation (all by other students) while in school and on the school bus.... Specifically: (1) D.G. was "thrown to the ground," "body slammed" and taunted by several students during lunch one day in September 2000, until an aide intervened and took D.G. to a school nurse; (2) D.G. was physically beaten by two boys-held down and hit on the head and back with his own binder-between classes in his special education teacher's resource room on March 30, 2001; (3) D.G. was subjected to "disability-related slurs," and his school books were thrown into the garbage in the cafeteria on five to eight separate occasions during the early part of the 2000-01 school year, resulting in his special education teacher's offering to eat lunch with D.G. in a separate room for the remainder of the 2000-01 school year (D.G. did eat with her there for the rest of the school year); (4) an unidentified student called D.G. a "retard" and started a fist fight on an afternoon bus ride on October 20, 2001; (5) an unidentified student took D.G.'s planner "over his protests" on October 22, 2001 (D.G. allegedly was too afraid to tell his special education teacher who did it); and (6) two students repeatedly taunted and hit D.G. on an afternoon bus ride on November 1, 2001, after which D.G. returned home upset, "locked himself in the bathroom, cried, and yelled 'I can't stand this anymore,'" and then bolted from the house.

*K.M.*, 381 F. Supp. 2d at 348 (citations and footnote omitted).

The allegations in the amended complaint, which the Court assumes are true for the purpose of ruling on Walker's motion, include the following:

> Beginning in January of 2007, [J.V.]'s "cross-contract" BOCES TVI instructor, Betsy Walker ("Walker"), began a campaign of harassment

against [J.V.] that culminated in his being diagnosed with Post Traumatic Stress Disorder ("PTSD").

(Am. Compl. ¶ 18 (footnote omitted). This conclusory statement does not plead factual allegations sufficient to raise a right to relief above the speculative level. More specific allegations are contained in the following paragraphs from the amended complaint:

> 22. On or about January 30, 2007, the first major incident with Walker occurred. [J.V.] came home from school very upset and crying. During free time, Valvano[5] asked [J.V.] to play his trumpet for the benefit of his fellow students and Grace Jackson ("Jackson"), Valvano's teaching assistant. Unbeknownst to [J.V.], Walker was also in the room. Upon finishing, Walker commanded [J.V.]: "Put your trumpet away now!" She then said: "It's too bad you don't practice reading as much as you practice trumpet; why can't you read like this?!" After being praised for his playing by the students, Walker startled [J.V.], making him visibly upset.
>
> 23. Mrs. Valvano tried to defuse the situation and asked [J.V.] to get his agenda out of his backpack. This request required [J.V.] to leave Valvano's classroom to go to his homeroom and get his agenda. All the way down to the homeroom, [J.V.] asked Nurse Rosemarie Loria ("Loria") what he had done wrong to make Walker yell at him. Upon entering the homeroom, [J.V.] began listening to Mrs. Nancy Green ("Green"), [J.V.]'s regular education teacher, addressing other students. Again, Walker came up behind him, and yelled very loudly: "[J.V.], get your agenda out!"
>
> 24. As a result of his blindness, [J.V.] is substantially reliant on his auditory environment and thus very sensitive to sound. This is a fact known to all the people around [J.V.]. The outburst by Walker frightened [J.V.] and caused him to cry. Later that same day, in Art class, Walker told [J.V.]: "I might as well go work with another student who wants to learn", and "I don't know why I bother to Braille things for you in Rochester until 7 P.M. if your mother is going to read it for you anyway." …
>
> 28. …Walker worked with [J.V.] around 11 A.M. that day, February 26, 2007, apparently without being informed of the earlier interview by Laspesa. [J.V.] was upset even being around her and started to cry. Walker told him to "stop crying, I did not yell at you." But [J.V.] simply wanted to go home.

---

[5] J.V.'s Special Education Teacher Kathy Valvano ("Valvano"). Am. Compl. ¶ 20.

13

29.... At the end of the day, during Health class, without another adult nearby to hear, Walker "calmly" told [J.V.], "I know you went to talk to Laspesa[6] about me; you really hurt my feelings," and "I cannot believe you told on me to your mother."

Am. Compl. ¶ 22–24, 28 & 29.

Viewing the allegations in a light most favorable to Plaintiffs, the Court certainly agrees that Walker's alleged words and actions are ill-mannered, uncivil and abrasive. However, they do not plausibly allege Walker created a hostile educational environment because of J.V.'s disability. The Supreme Court's guidance bears repeating:

> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 US at 678–79 (citation omitted). After careful review, the Court is convinced that aside from immunity, Plaintiffs' have not "show[n]" they are "entitled to relief" against Walker for creating a hostile educational environment because of J.V.'s disability.

Plaintiffs also argue that Walker did not comply with the individual education plan for J.V. since she failed to provide him with requisite orientation and mobility instruction which "deprived him of consistent practice in learning to maneuver through the school safely [and] [h]er failure to provide J.V. with orientation and mobility instruction was not objectively reasonable." Pl.s' Mem. of Law at 6.

---

[6]Honeoye Elementary School Principal, David G. Laspesa. (Am. Compl. ¶ 18.)

14

The Seventh cause of action pleads violations of the Fourth, Fifth and Fourteenth Amendments "and its laws…" without further elaboration. Am. Compl. ¶ 163. In the two following paragraphs, Plaintiffs refer to a hostile environment, a pattern of discrimination actions by the Honeoye school district and its employees, Am. Compl. ¶ 164, and, "[J.V.'s] civil rights, as guaranteed under the Constitution, statutes, common law, and case law of the United States and of New York State, were willfully violated by all of the above acts of the defendants," Am. Compl. ¶ 165. The allegations against Walker show she was frustrated with J.V., thought he could perform better than he was, and was upset that J.V. "told" on her to his mother and the principal. Obviously, if these allegations are true, Walker was an inappropriate teacher for J.V. However, viewing these facts in the light most favorable to Plaintiffs, the Court is unpersuaded they plausibly show a severe or pervasive educational atmosphere permeated by discrimination against J.V. because of his disability. Although Walker's comments were critical of J.V.'s academic performance, they did not belittle him because of his disability. Accordingly, the Court is not persuaded that Plaintiffs have alleged any plausible § 1983 claim against Walker.

***BOCES' and Walker's Cross-Motion for Reconsideration***

BOCES and Walker base their cross-motion for reconsideration and dismissal of the Fifth and Sixth causes of action and, if granted, for entry of judgment, on the Court's November 17, 2010, decision. In seeking their relief, Defendants contend that, "GRANTING DEFENDANTS' CROSS-MOTION RENDERS PLAINTIFF'S MOTION MOOT," CITE at 7, and argue that,

15

> the Amended Complaint asserts that the first alleged act by Walker regarding the student occurred on or about January 30, 2007, and the last on March 8, 2007. (para. 14) Plaintiffs' claims against BOCES and Walker are clearly time-barred. Accordingly, the Fifth and Sixth Causes of Action should be dismissed and, with their dismissal, the Amended Complaint should be dismissed in its entirety.

Def.s' Mem. of Law at 8. In opposing Defendants' application, Plaintiffs maintain that even without the Seventh cause of action, the Fifth and Sixth causes of action are not moot since, "Defendants remain adverse in the litigation and in these specific proceedings. Further, Defendants have not presented any evidence that 'there is no reasonable expectation that the wrong will be repeated.'" Pl.s' Reply Mem. of Law at 5 (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)).

The question of mootness is not before the Court. Rather, what renders the Fifth and Sixth causes of action susceptible to dismissal is the limitations period.[7] The amended complaint alleges that the incidents giving rise to the claims occurred: (1) on or about January 30, 2007, Am. Compl. ¶ 22 ("the first major incident with Walker"); (2) on February 26, 2007, Am. Compl. ¶ 28–29 ("Walker told [J.V.] to 'stop crying, I did not yell at you,'" and, "At the end of the day, during Health class, without another adult nearby to hear, Walker 'calmly' told [J.V.], 'I know you went to talk to Laspesa about me; you really hurt my feelings,' and 'I cannot believe you told on me to your mother.'"); and (3) on March 7, 2007 ("[J.V.] was very upset that Walker was present [in school]."). Plaintiffs filed their lawsuit on April 10, 2009, 765 days after the last incident that gave rise to the claims against Walker and BOCES. The allegations in the amended

---

[7] As the Court explained in its prior Decision and Order, at 10, the limitations period here under New York law is one year and 90 days, pursuant to N.Y. Gen. Mun. Law § 50-I and N.Y. Educ. Law § 3813(2-b).

complaint clearly establish that the alleged acts by Walker and BOCES occurred outside the applicable state law limitations period. Consequently, the Court grants Defendants' motion for reconsideration and upon reconsideration dismisses the Fifth and Sixth causes of action.

**CONCLUSION**

For the reasons stated above, Plaintiffs' motion to reconsider, ECF No. 58, is granted in part and denied in part. The Court denies reconsideration of dismissal of the Seventh cause of action against BOCES, but grants reconsideration with respect to Walker. In that regard, upon reconsideration the Court vacates its prior decision granting Walker's motion to dismiss upon grounds of qualified immunity, substitutes the analysis detailed above and grants Walker's motion, ECF No. 23, to dismiss the Seventh cause of action for failure to raise a plausible claim. Further, the Court grants Defendants' BOCES' and Walker's cross-motion for reconsideration, ECF No. 60, upon such reconsideration dismisses the Fifth and Sixth causes of action, and, as to both, dismisses the amended complaint. The Clerk is directed to enter judgment for BOCES and Betsy Walker.

IT IS SO ORDERED.

Dated: May 8, 2013
      Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge